# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MEMORIAL PRODUCTION PARTNERS LP, | § | |
| | § | |
| *Debtor.* | § | |
| _____ | § | |
| | § | |
| AERA ENERGY LLC, *et al.*, | § | CIVIL ACTION H-18-412 |
| | § | |
| *Appellants*, | § | |
| v. | § | |
| | § | |
| BETA OPERATING COMPANY, LLC, | § | |
| | § | |
| *Appellee.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is an appeal of the bankruptcy court's judgment filed by appellants Aera Energy LLC, Noble Energy Inc., and SWEPI LP ("Previous Owners"). Dkt. 1. The Previous Owners filed a brief in support. Dkt. 23. Appellee Beta Operating Company ("Beta") replied. Dkt. 24. Having considered the briefs, the bankruptcy court order, evidence, and applicable law, the court is of the opinion that the judgment of the bankruptcy court should be AFFIRMED.

### I. BACKGROUND

The Previous Owners had record title to certain petroleum assets (the "Beta Assets") that they leased from the federal government. Dkt. 1-2 at 5. They assigned their interests in the Beta Assets to Pacific Energy Resources Ltd. ("PERL"), which eventually sold its assets to Rise Energy Beta, LLC ("Rise"). *Id.* at 5, 7. Rise is now Beta. *Id.* at 7. Under the purchase and sales agreements ("PSAs"), PERL assumed liability for plugging and abandonment obligations associated with the

leases. *Id.* at 5–6. However, the Previous Owners remained jointly and severally liable for these obligations. *Id.*

PERL provided the federal government with a U.S. Treasury Note in the amount of $90 million to cover its estimated abandonment liability. Dkt. 1-2 at 6. PERL granted the Previous Owners a subordinate security interest in the Treasury Note and placed the Note's proceeds into a trust (the "Beta Trust"). *Id.* at 6–7. The Beta Trust is governed by the Beta Trust Agreement. *Id.* The Previous Owners are not parties to the Trust Agreement. *Id.* at 7.

PERL filed for bankruptcy and sold the Beta Assets to Rise. *Id.* at 7. The trustee, Rise, and the government then executed an amendment to the Trust Agreement that increased the estimated abandonment liability from $90 million to $152 million. *Id.* at 8. Rise made corresponding deposits to increase the trust balance. *Id.* In 2016, the government agreed to allow Rise to substitute $62 million in cash with surety bonds, but the trustee required consent from the Previous Owners. *Id.* at 8–9. The Previous Owners refused to consent. *Id.* at 9. Beta contends that this refusal was improper under various agreements and § 2.4(a) of the Beta Trust. *Id.* Beta thereafter filed bankruptcy. *Id.*

In its chapter 11 plan, Beta listed any claims held by the Previous Owners relating to the Beta Trust as Class 3B claims. *Id.* Beta's chapter 11 plan allowed Beta to either substitute some of the cash in the trust with surety bonds, leaving the Previous Owners with a lien on the bonds and any remaining cash, or provide the Previous Owners with "whatever other treatment that would render their claims unimpaired." *Id.* The Previous Owners opposed the plan. *Id.* at 10.

On April 14, 2017, the Bankruptcy Court confirmed the plan, with the exception of how it treated the Previous Owners' Class 3B claims. *Id.* Beta proposed to substitute all of the trust funds with $62 million in dual-obligee performance bonds and $90 million in U.S. Treasury notes. *Id.*

2

BOEM, the government agency in charge, confirmed that this plan was compliant with regulations. *Id.* The Previous Owners continued to oppose the plan, and Beta filed this adversary proceeding. *Id.*

In the bankruptcy court, Beta filed a motion for summary judgment. *Id.* at 11–12. The Previous Owners filed a motion to dismiss and requested withdrawal of reference in the alternative. *Id.*; *Beta Operating Co., LLC v. Aera Energy LLC (In re Mem'l Prod. Partners, L.P.)*, No. H-16-411, 2018 WL 4501459, at *2 (S.D. Tex. Sept. 20, 2018) (Miller, J.). The bankruptcy court issued a report and recommendation ("R&R") denying the request for withdrawal of reference. *Beta Operating Co., LLC*, 2018 WL 4501459, at *2. The Previous Owners objected to the R&R in a separate proceeding. *Id.* This court adopted the R&R in full and denied the Previous Owners' request for withdrawal of reference. *Id.* at *9.

After issuing the R&R, the bankruptcy court granted Beta's motion for summary judgment in part and denied the Previous Owners' motion to dismiss. Dkt. 1-2 at 21. The Previous Owners now appeal that judgment. Dkt. 1 at 1.

## II. LEGAL STANDARD

A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right—from the "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). "The factual findings of the bankruptcy court are reviewed for clear error and its conclusions of law are reviewed de novo." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 460 (5th Cir. 2012). Here, the Previous Owners only challenge the bankruptcy court's conclusions of law. The court therefore reviews the bankruptcy court's judgment de novo.

## III. ANALYSIS

The Previous Owners argue that the bankruptcy court erred by: (1) exercising jurisdiction over the case; (2) failing to join BOEM as a necessary and indispensable party; (3) incorrectly

3

interpreting the agreement ("Beta Trust Agreement") that governs the trust funds at issue; and (4) prematurely and incompletely ruling on Beta's motion for summary judgment. Dkt. 21.

### A. Jurisdiction

First, the Previous Owners argue that the bankruptcy court lacked jurisdiction over the case because the trust *res* is not estate property. Dkt. 21 at 11–15. However, bankruptcy courts' jurisdiction is not limited to "simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493 (1995).[1]

Moreover, this court has already determined that the bankruptcy court has jurisdiction in this case. *Beta Operating Co., LLC*, 2018 WL 4501459. In denying the Previous Owners' request for withdrawal of reference, the court held that all of the claims in the case "stem from the bankruptcy or the impact of the plan on the Previous Owners' interest and thus arose only in the context of bankruptcy." *Id.* at *9. The court reasoned that, under *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011), "this matter is a core issue and [] the Bankruptcy Court's exercise of jurisdiction was Constitutional." *Beta Operating Co., LLC*, 2018 WL 4501459 at *9. Therefore, the Previous Owners' jurisdictional challenge fails.

### B. Beta Trust Agreement Interpretation

On the merits, the Previous Owners argue that the bankruptcy court incorrectly interpreted the governing Trust Agreement. The primary issue is whether the Trust Agreement allows Beta to replace the cash in the Beta Trust with bonds, thereby releasing the trust cash for Beta's use during restructuring. Dkt. 21 at 13. Although BOEM has already approved the bonds-for-cash substitution

---

[1] Previous Owners rely on *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512 (5th Cir. 2014). However, in that case the Fifth Circuit merely held that the assets at issue were not a part of the bankruptcy estate, and therefore the bankruptcy court could not claim jurisdiction on that ground. *Id.* at 525–26. The court did not hold that bankruptcy courts only have jurisdiction over bankruptcy estate assets.

4

and ordered that the cash be released, the Previous Owners contend that the Trust Agreement does not allow for the substitution. *Id.*; Dkt. 27 at 9–10. The Trust Agreement § 2.4(a) provides:

> **Sentence 1:** Except as expressly provided in this Agreement . . . the Trustee shall not permit [Beta] to withdraw or transfer any of the Trust Funds from the Trust Account.
>
> **Sentence 2:** The Trustee shall not permit [BOEM] to withdraw or transfer from the Trust Account any of the Trust Funds other than as expressly provided for herein.
>
> **Sentence 3:** The Trustee shall comply with all orders and directions with respect to the Trust Funds from [BOEM] and the [Previous Owners] without further consent from [Beta]; <u>provided</u> that the Trustee shall not comply with any orders or direction from the [Previous Owners] unless [BOEM] consents thereto.

Dkt. 19 at 3263 (emphasis in original) (subdivisions added). The Previous Owners argue the Trust Agreement does not allow BOEM to order withdrawal in these circumstances, and that therefore BOEM cannot authorize the bonds-for-cash substitution in Beta's chapter 11 plan. Dkt. 21 at 19–24.

The court agrees that BOEM may not order a withdrawal or transfer that is not provided for in the Trust Agreement. Section 2.4(a), Sentence 2 unambiguously provides that BOEM does not have the power to order any withdrawals or transfers that are not expressly provided for elsewhere in the Trust Agreement.[2] The Previous Owners are therefore correct that the Beta Trustee need not comply with BOEM orders to withdraw or transfer trust assets if the Trust Agreement does not authorize BOEM to give such an order.

However, read as a whole, the Trust Agreement permits BOEM to order the proposed bonds-for-cash substitution. First, the Trust Agreement defines "Trust Funds" broadly. The trust *res* is not

---

[2] The Beta Trust Agreement is governed by California law. Dkt. 19 at 1061. California law provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. The parties do not dispute that the language of the Beta Trust Agreement is clear and explicit and does not involve an absurdity. The language of the contract therefore governs.

limited to cash; it expressly includes at least one "Supplemental Bond Treasury Note" and "all other funds that may be, from time to time, deposited into the Trust Account by [Beta]," including "all certificates, instruments, and documents representing, evidencing, or issued in connection with" the trust funds. Dkt. 19 at 3262 (Beta Trust Agreement § 1.2). Second, the Trust Agreement provides that if the balance of the trust exceeds $152 million, the excess amount "*shall* be disbursed to [Beta] . . . upon written notice to the Trustee from [BOEM] directing the release of such excess funds." Dkt. 18 at 3414–15 (Beta Trust Agreement § 2.2(b), (e)) (emphasis added). It follows, then, that if the Beta Trust contains more than $152 million in assets, BOEM may direct the release of the extra funds. Further, under § 2.4(a) Sentence 3, the Beta Trustee *must* follow BOEM's order to withdraw the excess funds because the withdrawal is expressly authorized by the Trust Agreement. Dkt. 19 at 3263 (emphasis added) ("The Trustee *shall* comply with all orders and directions with respect to the Trust Funds from [BOEM] and the [Previous Owners] without further consent from [Beta]; <u>provided</u> that the Trustee shall not comply with any orders or direction from the [Previous Owners] unless [BOEM] consents thereto.").

Here, BOEM is only ordered the release of cash from the Beta Trust after Beta displaced the cash with other assets of equal value—in this case, bonds. Dkt. 21 at 5; Dkt. 23 at 27–28. When Beta deposited the bonds into the Beta Trust, the bonds pushed the trust balance over the $152 million minimum. Thus, BOEM is authorized to order the withdrawal of the excess cash. Dkt. 18 at 3414–15 (Beta Trust Agreement § 2.2(b), (e)). The fact that the trust *res* will be comprised of bonds, instead of cash, does not change the scope of BOEM's authority to order release of the funds. *See* Dkt. 19 at 3262 (Beta Trust Agreement § 1.2).

Moreover, the Trust Agreement does not authorize the Previous Owners to veto BOEM orders. Section 2.4(a), Sentence 3 of the Trust Agreement gives BOEM the power to veto orders

6

given by the Previous Owners, but the Previous Owners have no such power. Dkt. 19 at 3263. Therefore, under the unambiguous language of the contract, BOEM may order the release of excess cash from the Beta Trust, and the Previous Owners need not consent to the order.

### C. Procedural Objections

Finally, the Previous Owners contend that the Bankruptcy Court procedurally erred by: (1) ruling on Beta's motion for summary judgment prior to the Previous Owners filing an answer and prior to discovery; (2) failing to join BOEM as a necessary and indispensable party; and (3) failing to address all of the Previous Owners' arguments. Dkt. 21 at 15–19, 24–26. However, none of these actions were procedural error.

#### 1. Timing of the Summary Judgment Order

First, the Previous Owners contend that the bankruptcy court erred by granting summary judgment for Beta when the Previous Owners had not yet filed an answer in the case. *Id.* at 15–16. However, "an answer is not a prerequisite to the consideration of a motion for summary judgment." *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003). The Previous Owners had adequate notice of the issues in the case and had an opportunity to be heard before the entry of final judgment. *See, e.g.*, Dkt. 19 at 4069–174 (motions hearing transcript); *see also HS Resources, Inc.*, 327 F.3d at 440 (reasoning that the district court did not err in granting summary judgment before the defendant filed an answer because the defendant "clearly made an appearance in the suit and therefore was not denied notice or an opportunity to be heard before the entry of final judgment").

The Previous Owners also argue that the bankruptcy court erred by granting summary judgment without allowing the parties to conduct discovery. Dkt. 21 at 16. Federal Rule of Civil Procedure 56 governs summary judgment motions in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056. However, "Rule 56 does not require that *any* discovery take place before summary

judgment can be granted." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990). "[D]eferring summary judgment and ordering discovery is appropriate only if the 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(d)).

Here, the Previous Owners cannot make the required showing. The dispositive issue in Beta's motion for summary judgment is the interpretation of the Trust Agreement. Under the applicable state law, the language of a contract governs its interpretation if the language is unambiguous.[3] The Previous Owners dispute how the Trust Agreement language should be interpreted, but do not dispute that the language is unambiguous. Dkt. 21 at 19–24. Thus, the only evidence that could be relevant to the contract interpretation issue is the contract itself. Although the Previous Owners claim that they are entitled to discovery on the issue of whether certain sureties are cash equivalents, such discovery is not relevant to how the court should interpret the Trust Agreement. *See* Dkt. 19 at 882. The Previous Owners thus fail to make the required showing that they "cannot present facts essential to justify [their] opposition" due to lack of discovery, and the bankruptcy court's actions were proper. Fed. R. Civ. P. 56(d).

**2. Failing to Join BOEM as a Necessary and Indispensable Party**

Second, the Previous Owners argue that the bankruptcy court erred by failing to join BOEM as a necessary and indispensable party. Dkt. 21 at 17. A person must be joined as a party if :

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[3] *See supra*, note 2.

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); Fed. R. Bankr. P. 7019. The Previous Owners appear to argue both that the bankruptcy court could not accord complete relief without BOEM's joinder and that a decision in BOEM's absence would affect BOEM's ability to protect its interest in the Beta Trust. Dkt. 21 at 17–18.

The bankruptcy court's order, however, does not affect BOEM's rights in the Beta Trust. Beta filed this adversary suit to determine rights as between itself and the Previous Owners. Dkt. 19 at 5–6. BOEM's rights in the Beta Trust, as beneficiary, were not affected by the bankruptcy court's determination that the Previous Owners did not have the right to block Beta's bonds-for-cash substitution. BOEM is still the beneficiary of the Beta Trust and none of its rights as beneficiary are affected by a determination of the Previous Owners' rights. Therefore, disposing of the case in BOEM's absence does not "impair or impede" BOEM's ability to protect its interest in the trust. Fed. R. Civ. P. 19(a)(1).

Nor does BOEM's absence prevent the court from providing complete relief between the parties. Again, Beta instituted this adversary proceeding for declaratory relief regarding the Previous Owners' control, or lack thereof, over the Beta Trust Funds. Dkt. 19 at 5–6. The bankruptcy court's grant of declaratory relief completely determined the Previous Owners' rights, even without BOEM's joinder. The court did not err in declining to join BOEM as a party.

### 3. Failing to Address All of the Previous Owners' Arguments

Finally, the Previous Owners contend that the bankruptcy court erred by failing to address all of the Previous Owners' arguments against summary judgment. Dkt. 21 at 32. In particular, the

Previous Owners contend that the bankruptcy court improperly failed to address their affirmative defenses. *Id.* at 33. Federal Rule of Civil Procedure 56 requires courts to "state on the record the reasons for granting or denying" summary judgment. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. However, Rule 56 does not require the court to address every component of each party's arguments. Further, the Previous Owners do not argue the merits of their affirmative defenses in this appeal. Rather, they argue that it was procedurally improper for the bankruptcy court to fail to address their arguments. *Id.* "An appellant abandons all issues not raised and argued in its initial brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). The court therefore declines to address the merits of the Previous Owners' affirmative defenses.

### IV. CONCLUSION

The unambiguous language of the Beta Trust Agreement authorizes Beta's proposed bonds-for-cash substitution. Accordingly, the judgment of the bankruptcy court is AFFIRMED.

Signed at Houston, Texas on October 31, 2018.

_____
Gray H. Miller
United States District Judge